UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>SANG N. PHAN and RICH N. PHAN,<br><br>Defendants. | Civil Action File No.<br><br>4:22-cv-149-CDL |

**ORDER GRANTING SEC'S MOTION FOR SUMMARY JUDGMENT, ENTERING FINAL JUDGMENT AND ORDERING DISGORGEMENT, PREJUDGMENT INTEREST AND A CIVIL PENALTY AGAINST DEFENDANT SANG N. PHAN AND ORDERING A CIVIL PENALTY AGAINST DEFENDANT RICH N. PHAN**

Plaintiff Securities and Exchange Commission (the "Commission" or "SEC") has filed its Complaint herein. Defendants Sang N. Phan and Rich N. Phan have previously entered their general appearances, and have each admitted the in personam jurisdiction of this Court over him and the jurisdiction of this Court over the subject matter of the action.

By separate orders of this Court entered December 29, 2022 both defendants were permanently restrained and enjoined from further violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5] and were ordered to comply with certain restrictions and conditions in opening brokerage accounts and trading in stocks in the future. The order of permanent injunction against Sang N. Phan also directed that, upon motion of the Commission, "that Defendant shall pay disgorgement of ill-gotten gains, prejudgment

interest thereon, and a civil penalty pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. §78u(d)(3)]. The Court shall determine the amounts of disgorgement and civil penalty upon motion of the Commission. Prejudgment interest shall be calculated . . . based upon the rate of interest used by the Internal Revenue Service for the underpayment of federal income tax as set forth in 26 U.S.C. §6621(a)(2)." [Order of Permanent Injunction and Other Relief as to Sang N. Phan, ¶ III]. The order of permanent injunction against Rich N. Phan also directed that upon motion of the Commission, "that Defendant shall pay a civil penalty pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. §78u(d)(3)]. The Court shall determine the amount of the civil penalty upon motion of the Commission. [Order of Permanent Injunction and Other Relief as to Rich N. Phan, ¶ III].

Each Order further states that in connection with the Commission's motion for monetary relief against the defendants, "(a) Defendant will be precluded from arguing that he did not violate the federal securities laws as alleged in the Complaint; (b) Defendant may not challenge the validity of the Consent or this Order of Permanent Injunction; (c) solely for the purposes of such motion, the allegations of the Complaint shall be accepted as and deemed true by the Court; and (d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, and documentary evidence, without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure."    [Orders of Permanent Injunction and Other Relief as to Sang N. Phan and as to Rich N. Phan], ¶ III of each respective order].

Defendants Sang N. Phan and Rich N. Phan each consented to the terms of the December 29, 2022 respective order of permanent injunction against him.  The Commission's motion for summary judgment and to order disgorgement, prejudgment interest and a civil penalty against Sang N. Phan and motion for a civil penalty against Rich N. Phan is currently before this Court.  All of the allegations of the Commission's complaint are deemed to be true for purposes of this motion for summary judgment.  The Commission's motion is also based upon the Declaration of Stephen E. Donahue, Esq., the SEC Assistant Director for Enforcement who supervised the agency's investigation of the matter, which sets forth the monetary benefit, in the form of losses avoided, of Sang N. Phan's actions in the fraudulent free-riding scheme.  To that end, and by his fraudulent conduct, Sang N. Phan's conduct gives rise to disgorgement of his unjust enrichment and a civil penalty in an amount set by the Court in this final judgment.  Similarly, Rich N. Phan's culpability in the fraudulent free-riding scheme set forth in the Complaint gives rise to a civil penalty against him.

Based upon all of the information before this Court, the Court concludes that summary judgment on the issue of disgorgement, prejudgment interest thereon, and a civil penalty against defendant Sang N. Phan; and summary judgment on the issue of a civil penalty against defendant Rich N. Phan is appropriate.

### **Material Facts To Which No Genuine Issue Exists**

From all of the evidence before the Court, it appears that no genuine issue exists as to the following facts:

**Summary of Sang N. Phan's and Rich N. Phan's Conduct**

The allegations of the Complaint, which are accepted as true for purposes of this motion against the Defendants, can be summarized as follows:

The Commission brought this action against Defendants Phans for direct violations of the securities antifraud provisions of the federal securities laws, namely, Section 10(b) of the Exchange Act of 1934 and Rule 10b-5 thereunder. (Statement of Material Facts, "SMF" ¶ 5). This matter concerns a "free-riding" scheme perpetrated by Columbus, Georgia based residents and brothers, Sang N. Phan ("Sang Phan") and Rich N. Phan ("Rich Phan") (collectively, the "Phans" or the "Defendants"), that resulted in net losses of at least $12,830.36 to two registered broker-dealers. (SMF ¶ 6). "Free-riding," in this matter, describes the fraudulent practice used by securities traders who seek to exploit the "instant deposit" credit extended by certain broker-dealers in advance of incoming fund deposits. (SMF ¶7). By depositing funds into their brokerage accounts from bank accounts that they know lack sufficient funds, these traders use the "instant deposit" credit extended by the broker-dealers to buy and sell securities, hoping to earn and withdraw trading profits before the broker-dealer is notified of the insufficient funds and freezes the account. (SMF ¶ 8).

Specifically, between February 2021 and early May 2021 (the "Relevant Period"), Sang Phan and Rich Phan engaged in a free-riding scheme involving four brokerage accounts—three at Broker A [TD Ameritrade] and one at Broker B [Webull Financial, LLC]—each of which they opened using account applications that falsely inflated the net worth of the account holder. (SMF ¶ 9). Sang Phan opened three of these accounts through

the internet—two in his own name and one in the name of his girlfriend—and Rich Phan, working with Sang Phan, opened one of these accounts online in his name. (SMF ¶ 10). Over the Relevant Period, acting individually or in concert, the Phans made eight separate bogus fund deposits over the internet into these accounts totaling $222,699.99 from bank accounts which they knew, or recklessly disregarded knowing, held insufficient fund balances to cover the transfers. (SMF ¶ 11).

Using the resulting instant deposit credit provided by Broker A [TD Ameritrade] or Broker B [Webull Financial, LLC], Sang Phan used the online platforms of Broker A [TD Ameritrade] and Broker B [Webull Financial, LLC], respectively, to purchase a total of at least $59,723.47 in biotechnology company stocks, hoping to profit from the ongoing coronavirus pandemic. (SMF ¶ 12). The Phans also made at least $30,828 in securities purchases in Rich Phan's online account which Broker A [TD Ameritrade] reversed before any profit or loss was incurred after the firm detected the free-riding and linked the multiple accounts being used by the Phans. (SMF ¶ 13). None of the Phans' trading was profitable. (SMF ¶ 14). After the bogus fund transfers reversed and the broker-dealers froze and liquidated the securities holdings in Sang Phan's accounts, the firms were left with net losses of $12,830.36—an amount that Sang Phan has not satisfied to date. (SMF ¶ 15).

On February 11, 2021, Sang Phan applied for a brokerage account at Broker A [TD Ameritrade] by submitting an online application in which he falsely inflated his personal assets, claiming he had a net worth between $50,000 and $99,999, when he knew he had no such net worth. (SMF ¶ 16). Sang Phan lied in his online application to Broker A [TD Ameritrade] by overstating his personal wealth because his initial

application for a brokerage account had previously been rejected when he accurately reported his minimal assets of approximately $1,000. (SMF ¶ 17).

Once his account was open at Broker A [TD Ameritrade], Sang Phan established an internet link between his brokerage account and his bank account in his name at his banking institution, which held only $989.44 at the time of his brokerage account application. (SMF ¶ 18). Sang Phan acquired that bank balance as income in February 2021 from a pandemic-related unemployment program. (SMF ¶ 19). Roughly three weeks later, on March 3, 2021, Sang Phan initiated four fake online deposits totaling $72,000 from his bank account into his brokerage account at Broker A [TD Ameritrade] and used the instant deposit credit granted by Broker A [TD Ameritrade] to purchase $58,315.65 of common stock of Ocugen, Inc. (ticker: "OCGN"), a biotechnology company which he understood was working on vaccines. (SMF ¶ 20). Sang Phan made the four deposits to his brokerage account at Broker A [TD Ameritrade] all the while knowing that he was without funds in his bank account to cover the transactions. (SMF ¶ 21). Sang Phan knew his bank account had insufficient funds to cover the four deposits when he initiated the online transactions, and, in fact, the balance of his bank account was only $1,074.74 when the transactions were initiated on the Broker A [TD Ameritrade] platform. (SMF ¶ 22).

Sang Phan's goal in this scheme was to initiate bogus electronic fund transfer ("EFT") deposits and use the instant deposit credit granted by Broker A [TD Ameritrade] to trade in biotechnology-related securities which he believed would allow him to profit from the coronavirus pandemic. Sang Phan hoped to pull off the scheme by pulling out profits from his brokerage account before the bank deposits were reversed for insufficient

funds and before Broker A [TD Ameritrade] froze his account at the broker-dealer. (SMF ¶ 23). However, Sang Phan's trading was not profitable. (SMF ¶ 24). On March 5, 2021, each of the bogus deposits that Sang Phan initiated two days earlier reversed due to insufficient funds in his bank account. (SMF ¶ 25). Thereafter, Broker A [TD Ameritrade] froze Sang Phan's account and a few days later liquidated his holdings, leaving his account with trading losses and a negative balance totaling $12,670.27, including $140.81 in unpaid fees, which remain outstanding. (SMF ¶ 26).

Sang Phan was joined in his efforts by his younger brother, Rich Phan, and together they continued the free-riding scheme. (SMF ¶ 27). Specifically, sitting at a table at Rich Phan's home, Sang Phan worked with his brother at his side to open a brokerage account online at Broker A [TD Ameritrade] in Rich Phan's name on March 3, 2021—the same day that Sang Phan was free-riding in his own brokerage account at Broker A [TD Amertrade]. (SMF ¶ 28). Rich Phan knowingly provided his Social Security number and phone number for the account application and electronically signed the online application himself when completed, while Sang Phan entered fraudulent financial information, falsely claiming that Rich Phan had both an annual income and a net worth between $50,000 and $99,999. (SMF ¶ 29). Sang Phan knew that, in reality, his brother Rich Phan had no meaningful savings. (SMF ¶ 30). Sang Phan worked with his brother to establish an online link between the new brokerage account at Broker A [TD Ameritrade] and Rich Phan's own personal bank account at his banking institution. (SMF ¶ 31).

Sang Phan and/or Rich Phan actually set up Rich Phan's bank account link online and once the account was open, Rich Phan knowingly gave Sang Phan permission to

7

make bogus deposits in Rich Phan's brokerage account at Broker A [TD Ameritrade] to obtain instant deposit credit in order to free-ride. (SMF ¶ 32). Sang Phan and Rich Phan jointly sat together at a table while Sang Phan entered transactions into a computer, which initiated unfunded deposits totaling $50,000 into Rich Phan's brokerage account at Broker A [TD Ameritrade] on March 4, 2021. (SMF ¶ 33). At the time of these deposits, the Phans understood the deposits would not process because Rich Phan's bank account had a balance of only $791.85. (SMF ¶ 34). The Phans then used Rich Phan's brokerage account at Broker A [TD Ameritrade] to make $18,423 in purchases of Severn Bancorp Inc. (ticker "SVBI"), a Maryland-based savings and loan company, as well as $12,405 in purchases of GameStop Corporation (ticker "GME"), a Texas-based retail video gaming store, all of which were filled on the secondary market. However, Broker A [TD Ameritrade] quickly rejected and cancelled the SVBI and GME purchases on March 4, 2021, and closed Rich Phan's account before any profit or loss was incurred on the trades. Broker A [TD Ameritrade] reversed the purchases after having linked Rich Phan's account to Sang Phan's account, and after confirming that Rich Phan had not paid for the securities purchases. (SMF ¶ 35). Specifically, an internal fraud detection unit at Broker A [TD Ameritrade] connected the Phan brothers' accounts because each had listed the address of a local relative as the brokerage account mailing address. (SMF ¶ 36).

      Also on March 4, 2021, Sang Phan completed an online account application for a brokerage account at Broker A [TD Ameritrade] in the name of his then girlfriend. (SMF ¶ 37). Rather than using the feminine, Sang Phan used the actual name of his girlfriend, preceded by "Mr." on the application. (SMF ¶ 38). Sang Phan provided further false

8

information about his girlfriend on the application, by falsely claiming that she had both an annual income and a net worth between $50,000 and $99,999. Sang Phan knew at the time he included this false information on the brokerage account application that they were not true. (SMF ¶ 39). 40) In reality, Sang Phan's then girlfriend did not then have any savings, did not have a bank account, and was only working part-time occasional jobs. (SMF ¶ 40). Sang Phan linked his girlfriend's new brokerage account at Broker A [TD Ameritrade] to his own bank account and, on March 5, 2021, initiated a $99,999.99 online deposit into his girlfriend's brokerage account. At the time of this deposit, however, Sang Phan's bank account had a balance of only $170.56. (SMF ¶ 41). Sang Phan made the bogus EFT into his girlfriend's brokerage account because he was again trying to trade using fraudulently obtained instant deposit credit so that he could attempt to withdraw profits before the deposits reversed for insufficient funds. (SMF ¶ 42). His girlfriend's brokerage account was used to place purchase orders through Broker A's [TD Ameritrade] online platform of OCGN, GME and Jaguar Health, Inc. (ticker: "JAGX"), a pharmaceutical company that focuses on "discovering, developing and commercializing plant-based prescription medicines for urgent global health needs," according to the company's website. (SMF ¶ 43). However, Broker A [TD Ameritrade] rejected and cancelled the orders and closed the account after linking the girlfriend's brokerage account to Sang Phan's bank account at Broker A. (SMF ¶ 44).

      A few months later in 2021, Sang Phan engaged in more free-riding in a brokerage account in his name at Broker B [Webull Financial, LLC]. (SMF ¶ 45). Similar to his conduct at Broker A {TD Ameritrade], Sang Phan initially provided Broker B [Webull Financial, LLC] with an online account application containing false financial

9

information. (SMF ¶ 46). Specifically, Sang Phan's account application submitted to Broker B [Webull Financial, LLC] on December 29, 2020, listed his total net worth as being between $50,001 and $100,000. (SMF ¶ 47). However, Sang Phan's bank account balance on December 29, 2020, was only $130. (SMF ¶ 48). The following year, but some months after Sang Phan's free-riding at Broker A [TD Ameritrade], on May 4, 2021, Sang Phan initiated a $700 online deposit from his bank account into his brokerage account at Broker B [Webull Financial, LLC]. However, his bank account balance was then only $37.78. (SMF ¶ 49). Before the deposit reversed for insufficient funds, Sang Phan made $1,407.82 in buys and $1,272.45 in sells using Broker B's [Webull Financial, LLC] online platform in the stocks of OCGN, as well as another biotechnology company called Cocrystal Pharma, Inc. (ticker "COCP"), which purportedly at that time was developing novel antiviral therapeutics targeting coronaviruses. (SMF ¶ 50). After the false deposit was reversed, his account at Broker B [Webull Financial, LLC] was left with trading losses and a negative balance of -$160.09, including $30 in reversal fees. (SMF ¶ 51).

## Disgorgement and Prejudgment Interest Calculations
## And Amounts of Civil Penalties

Pursuant to the calculations of SEC Assistant Director Stephen E. Donahue as set forth in his sworn declaration, Defendant Sang N. Phan should be called upon to disgorge the full amount of ill-gotten gains in the form of the trading losses and unpaid account fees avoided in this scenario, in the amount of $12,830.36. As set forth in the declaration, this calculation is based substantially on Sang Phan's conduct in this securities fraud matter, and constitutes the amount of losses incurred by Brokers A and B [TD Ameritrade and Webull Financial, LLC, respectively.] (SMF ¶ 53). Prejudgment

interest has been calculated on the amount of $825.54 from May 31, 2021 through January 31, 2023, at the interest rates used by the Internal Revenue Service for unpaid balances (which changes quarterly, and for the relevant period herein ranged from a low of 3% annually to a high of 6% annually).  During that period, the total prejudgment interest on $12,830.36 totals $825.54. Disgorgement and prejudgment interest owed by Sang Phan totals $13,655.90.  (SMF ¶ 54).

## I.

**IT IS ORDERED, ADJUDGED AND DECREED** that Defendant Sang N. Phan is liable for disgorgement in the amount of $12,830.36, representing his unlawful gains as a result of the fraudulent conduct set forth in the Complaint, together with prejudgment interest thereon in the amount of $825.54.  Defendant shall satisfy this obligation by paying $13,655.90 to the Securities and Exchange Commission within 30 days after entry of this Final Judgment.

Defendant Sang N. Phan may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request.  Payment may also be made directly from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm.  Defendant may also pay by certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission, which shall be delivered or mailed to

> Enterprise Services Center
> Accounts Receivable Branch
> 6500 South MacArthur Boulevard
> Oklahoma City, OK 73169

and shall be accompanied by a letter identifying the case title, civil action number, and name of this Court; Sang N. Phan as a defendant in this action; and specifying that payment is made pursuant to this Final Judgment.

Defendant shall simultaneously transmit photocopies of evidence of payment and case identifying information to the Commission's counsel in this action to Edward G. Sullivan, Esq., Securities and Exchange Commission, 950 East Paces Ferry Road, NE, Suite 900, Atlanta, GA 30326.  By making this payment, Defendant Sang N. Phan relinquishes all legal and equitable right, title, and interest in such funds and no part of the funds shall be returned to Defendant Sang N. Phan.  The Commission may enforce the Court's judgment for disgorgement and prejudgment interest by all collection procedures authorized by law, including, but not limited to, moving for civil contempt at any time after 30 days following entry of this Final Judgment.  Defendant Sang N. Phan shall pay post judgment interest on any delinquent amounts pursuant to 28 U.S.C. § 1961.

## II.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Defendants Sang N. Phan and Rich N. Phan shall *each* pay a civil penalty in the amount of $25,000 pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]. Defendants Sang N. Phan and Rich N. Phan shall each make his respective payment within thirty (30) days after entry of this Final Judgment. Defendants Sang N. Phan and Rich N. Phan may *each* transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request.  Payment may also be made directly from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm.  Defendants may also pay by certified check,

bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission, which shall be delivered or mailed to

>   Enterprise Services Center
>   Accounts Receivable Branch
>   6500 South MacArthur Boulevard
>   Oklahoma City, OK 73169

and shall be accompanied by a letter identifying the case title, civil action number, and name of this Court; Sang N. Phan or Rich N. Phan as a defendant in this action; and specifying that payment is made pursuant to this Final Judgment.

Defendants Sang N. Phan and Rich N. Phan shall *each* simultaneously transmit photocopies of evidence of payment and case identifying information to the Commission's counsel in this action to Edward G. Sullivan, Esq., Securities and Exchange Commission, 950 East Paces Ferry Road, NE, Suite 900, Atlanta, GA 30326. By making this payment, Defendants Sang N. Phan and Rich N. Phan *each* relinquishes all legal and equitable right, title, and interest in such funds and no part of the funds shall be returned to either Defendant. The Commission may enforce the Court's judgment for penalties by the use of all collection procedures authorized by law, including the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001 *et seq*., and moving for civil contempt for the violation of any Court orders issued in this action. Defendants, with respect to the civil penalties ordered as to each of them individually, shall pay post judgment interest on any delinquent amounts pursuant to 28 U.S.C. § 1961.

### III.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the Commission shall hold any funds paid by the Defendants pursuant to Sections I and II of

this Final Judgment, together with any interest and income earned thereon (collectively, the "Fund"), pending further order of the Court.

The Commission may propose a plan to distribute the Fund subject to the Court's approval. Such a plan may provide that the Fund shall be distributed pursuant to the Fair Fund provisions of Section 308(a) of the Sarbanes-Oxley Act of 2002. The Court shall retain jurisdiction over the administration of any distribution of the Fund and the Fund may only be disbursed pursuant to an Order of the Court.

Regardless of whether any such Fair Fund distribution is made, amounts ordered to be paid as civil penalties pursuant to this Judgment shall be treated as penalties paid to the government for all purposes, including all tax purposes. To preserve the deterrent effect of the civil penalty, neither Defendant shall, after offset or reduction of any award of compensatory damages in any Related Investor Action based on Defendant's payment of disgorgement in this action, argue that he is entitled to, nor shall he further benefit by, offset or reduction of such compensatory damages award by the amount of any part of Defendant's payment of a civil penalty in this action ("Penalty Offset"). If the court in any Related Investor Action grants such a Penalty Offset, Defendants shall, within 30 days after entry of a final order granting the Penalty Offset, notify the Commission's counsel in this action and pay the amount of the Penalty Offset to the United States Treasury or to a Fair Fund, as the Commission directs. Such a payment shall not be deemed an additional civil penalty and shall not be deemed to change the amount of the civil penalties imposed in this Final Judgment. For purposes of this paragraph, a "Related Investor Action" means a private damages action brought against either or both

14

Defendants by or on behalf of one or more investors based on substantially the same facts as alleged in the Complaint in this action.

IV.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the terms of the Final Judgment include the directives in this order, and further include the terms of the *Permanent Injunction and Other Relief as to Defendant Sang N. Phan* and the *Permanent Injunction and Other Relief as to Defendant Rich N. Phan* both signed by this Court on December 29, 2022.  There being no just reason for delay, the Clerk is directed to enter this final judgment against Defendants Sang N. Phan and Rich N. Phan forthwith. This Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment

Dated: June 6, 2023

S/Clay D. Land
_____
Clay D. Land, Judge
MIDDLE DISTRICT OF GEORGIA